## Chapman v. Commonwealth.

December 16, 1947.

Rehearing denied March 26, 1948.

R. M. Coleman, Judge.

Rodes K. Myers, Wilbur O. Bilyeu, Leland H. Logan and August Winkenhofer for appellant.

Eldon S. Dummit, Attorney General, H. K. Spear, Assistant Attorney General, R. D. Willock and J. T. Orendorf for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

T. D. Chapman, appellant, convicted of the voluntary manslaughter of one F. W. Perdue and sentenced to 2 years in the penitentiary, brings us this appeal.

The appellant now contends that the judgment is prejudicially erroneous because the trial court (1) should have continued the case and (2) should have directed a verdict for appellant.

Chapman, a freight conductor for Louisville and Nashville Railroad Company for many years, shot and killed F. W. Perdue, a freight engineer and likewise employed by the same company for many years, at the company's roundhouse in Bowling Green in the evening of March 24, 1946, just as the two were preparing to make a run together on a train destined for Louisville. There had been two previous difficulties between these two men. Some months before the killing, Chapman had engaged in a slight argument with Perdue, who was his engineer at that time and out on a run with him, over the question of Perdue's drinking on the job. And then on the very evening of the killing and just a short interval before it occurred, Perdue himself raised the drinking subject when he met Chapman at a restaurant in Bowling Green. Upon this latter occasion, Perdue, who was then under the influence of liquor, according to appellant's evidence, threatened to kill Chapman. Whereupon, Chapman left the restaurant, notified railroad officials that Perdue was under the influence of liquor and ought not to make the pending run, procured his own pistol, proceeded with the notified officials to the roundhouse, where Perdue had gone upon leaving the restaurant. The purpose of the visit by the officials to the roundhouse was for a personal interview with

Perdue to ascertain whether he was capable of making the proposed run with Chapman. At the roundhouse interview, Perdue called Chapman a son-of-a-bitch, Chapman kicked Perdue in the stomach, Perdue advanced toward Chapman but was caught just as he did so by one of the two railroad officials standing on either side of Perdue at the time, and immediately thereupon Chapman fired his pistol into the heart of Perdue, who was not armed with any kind of weapon at the time of this unfortunate event.

1. Appellant contends that the trial court should have ordered a continuance rather than a trial of this case because of the showing of illness on the part of both himself and his attorney on the day of this trial.

The illness of appellant consisted of a long standing, pulmonary tuberculosis, apparently in an arrested condition, acute sinusitis for which he had been recently hospitalized, some arthritis and some deafness. But he was present in person for this trial, which occurred about 10 months after the killing, and he took the witness stand and testified in what appears to have been a strong and normal manner in his own defense. We have followed the general rule of upholding a trial court's decision as to refusal of a continuance, where such continuance was sought by reason of a litigant's illness, especially in the absence of any indication that the trial court's discretion was abused and especially upon a positive indication that the litigant himself appeared at the trial and took normal, active part in his own behalf. See Terrell v. Flack's Adm'r, 236 Ky. 325, 33 S. W. 2d 23.

As to the illness of appellant's attorney, this record shows that the attorney's teeth had been extracted about 3 weeks before this trial and that he had been under a physician's care and treatment about that same time for some other physical troubles, either related or unrelated. However, the attorney was present and was active and vigorous throughout this trial. No doubt the trial judge was in position to reach an accurate appraisal as to the attorney's physical ability to defend his client on this occasion. And we see no clear indication that the trial judge made an inaccurate appraisal of such ability or that the attorney's illness sub-

stantially thwarted his normal power or skill as a trial advocate. Besides, appellant's own brief shows that this particular attorney is one in a partnership of three attorneys, and we doubt not that this trial could have been ably conducted by either of the other two partners if that had been necessary.

We have often held that the trial court's discretion in granting or refusing a continuance will not be disturbed on appeal in the absence of an abuse of that discretion. Watson v. Bean, 208 Ky. 295, 270 S. W. 801; Ocean Accident & Guarantee Corp. v. Heavrin, 231 Ky. 305, 21 S. W. 2d 435; Park Circuit & Realty Co. v. Coulter, 233 Ky. 1, 24 S. W. 2d 942.

2. Appellant's second contention is that a verdict should have been directed for him, because all the evidence on this trial proved, he says, that he acted in own self defense in taking the life of Perdue.

Of course, Chapman was fully justified when he criticised Perdue for drinking on the job. For that he should be commended. And truly enough, the evidence indicated that Perdue did threaten Chapman shortly before the tragedy at the roundhouse. Likewise, Chapman stated in his testimony to the jury that Perdue appeared to have been holding something shiny like a weapon when the shooting occurred. Nevertheless, this court, and likewise the trial jury in all probability, found itself unable to justify Chapman's acts of arming himself, of following Perdue over to the roundhouse, of shooting Perdue through the heart while one railroad official restrained him and another stood near by to do likewise if necessary and while Perdue actually had no weapon whatever with which to harm Chapman. These acts of Chapman were never satisfactorily explained. These acts were not harmonious with Chapman's theory of self defense. These acts were discordant with Chapman's plea of having acted only for his own self preservation.

We have frequently said that a peremptory instruction for acquittal is not proper where there is legal evidence tending to support a theory of the guilt of an accused. Crawford v. Commonwealth, 35 S. W. 114, 18 Ky. Law Rep. 16; Bennett v. Commonwealth, 133 Ky. 452, 118 S. W. 332; Kirk v. Commonwealth, 192 Ky. 460,

804

233 S. W. 1060; Kennedy v. Commonwealth, 194 Ky. 502, 239 S. W. 796. And upon this trial, there was, we believe, on both sides of the controversial question of this case, sufficient evidence in quantity and quality to necessitate a final determination by the jury. And the jury having responded by rejecting the self preservation theory of appellant and by adopting the manslaughter theory of the Commonwealth, this court cannot disturb the result.

While we are not happy to see appellant, who was a faithful servant of his employer and whose past record of good citizenship was well established, faced with his present difficulty, yet we are bound to say that we have found no error in this record to the prejudice of appellant's substantial rights as they were resolved before the bar of justice and at the hands of a jury selected by him from among his peers.

Wherefore, the judgment is affirmed.